

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN  DIVISION

NINA  MCMULLEN,            ]

        ]

    Plaintiff(s),       ]

        ]

    vs.              ]     CV-99-N-02723-W

        ]

DRUID CITY HOSPITAL REGIONAL   ]

MEDICAL CENTER,        ]

        ]

    Defendant(s).

**ENTERED**

OCT 1 0 2002

### Memorandum of Opinion

## I.    Introduction

The plaintiff, Nina McMullen ("McMullen"), alleges that her employer, defendant Druid City Hospital Regional Medical Center ("DCH"), violated the provisions of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") when it refused to promote her to a staff nurse position with the Heart Team, by hiring a private investigator to review her charge of racial discrimination, by disciplining her more harshly than white employees, by transferring her to the Prep/Discharge unit after her back surgery, and subsequently transferring her to the General Operating Room, rather than the Heart Team.

This matter is presently before the court on DCH's motion for summary judgment, filed on July 1, 2002 (Doc. #43). McMullen is proceeding pro se and has received an order explaining her summary judgment obligations. (Doc. #47). She has responded to the motion and the court has considered her responses in light of her status as a pro se litigant.

After careful consideration of the arguments of both parties, the relevant law, and the record as a whole, the motion for summary judgment is due to be **GRANTED** in all respects.

**II.    Statement of Facts**[1]

The facts, as garnered from the affidavits and deposition testimony submitted by the parties but viewed in a light most favorable to the plaintiff, are:

DCH is a hospital and medical services facility located in Tuscaloosa, Alabama. Within the OR (Operating Room) Department, there are five surgical teams: the General OR Team, the Heart Team, the Gyno-Urinary Team, the Neurological Team, and the Orthopedic Team. Staff Registered Nurses ( hereinafter "RN") work on all of these surgical teams. All staff nurses in the OR share the same job classification, pay scale, benefits, and general terms and conditions of employment.

McMullen, an African American, was hired by DCH in 1990 as an RN. She initially worked in the Orthopedic department at DCH, but subsequently transferred to a staff nurse position in the OR in 1992. During her employment as an OR staff nurse, McMullen has worked on all of the surgical teams at various times and remains employed by DCH as an OR staff nurse today.

The Heart Team is a specialty area within the general operating room which requires high levels of skill, teamwork, responsiveness and cooperation under stressful working conditions. Members of the Heart Team are selected by a selection committee, which is

---

[1] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

made up of all the members of the Heart Team.  This includes the Heart Team physicians, nursing and operating staff, and management.  While each member of the Heart Team may not individually interview all the applicants, each member does have input in the selection process.  Staff nurses selected for the Heart Team from other surgical teams within the OR do not receive a pay increase or change in job title with the transfer.

McMullen alleges that she applied for a transfer to the Heart Team on four occasions.  The first occasion was in 1994 or 1995.  She applied again in January 1998, when Tracey Shafer was selected for the Heart Team staff nurse position based on the recommendation of the selection committee.  Unlike McMullen, Shafer had previous heart team experience, in addition to general operating room experience.  In fact, Shafer had spent the previous five years working in Open Heart/Cardio-Vascular Thoracic surgery for her previous employer.  McMullen did not have any significant heart team experience at the time of her application and concedes that the selection committee's decision to pick Shafer over her was justified. [McMullen Dep. at p. 260].  Her third application to transfer to the Heart Team was in November 1998, when Rick Dude was selected for the position.  Like Shafer, Dude was selected based on the recommendation of the selection committee's assessment that he was the more qualified candidate.  Dude had worked as an OR staff nurse at DCH's Northport facility since 1992, and  Dude also did relief work in the OR at the Tuscaloosa facility.   According to the selection team, he had a good rapport with the physicians, and the team felt Dude would perform well in the critical areas of teamwork, responsiveness, and cooperation.  McMullen does not contest DCH's assertion that hiring Dude was also a justified decision.  (McMullen Dep. at pp. 260-61).  On the fourth occasion

3

and after an extensive investigation and careful consideration of her past performance issues (as will be discussed below), DCH offered McMullen a position on the Heart Team. Previously, DCH hesitated to move McMullen to the team because she had several documented performance deficiencies. Among them were an inability to work cooperatively with other employees and several incidents relating to poor documentation and inattention to detail.[2]

In January 1999, McMullen sent a letter to Kay Troxler, DCH's Vice President of Human Resources complaining about her failure to be selected for vacant positions and her overall working environment. She also raised concerns of race discrimination.[3] In an effort to fully and fairly investigate McMullen's complaints, DCH hired an outside investigator, Terry Price, Esquire. Mr. Price interviewed McMullen and over twenty employees and physicians who worked in the OR. The investigation did not substantiate McMullen's claims of race discrimination and confirmed prior performance deficiencies. Nevertheless, Price also concluded that some of DCH's concerns had not been fully addressed in Plaintiff's documented performance record. Therefore, DCH offered her the opportunity

---

[2] As will be recited *infra* DCH alleges that McMullen had a variety of performance issues. She received either a written or verbal warning for most of these complaints. McMullen does not dispute that the issues arose, however for each instance she presents evidence generally tending to show that the incidents were taken out of context.

[3] Plaintiff pursued this complaint despite the fact that in January 1999, DCH offered Plaintiff a promotion to an assistant nurse manager position in central sterilization. This promotion would have resulted in a six percent pay increase and also would have satisfied Plaintiff's previously expressed goals of being promoted out of the OR into a management position where she could utilize her education degree. Nevertheless, Plaintiff rejected the offered promotion, insisted that she be transferred to the Heart Team, and submitted a list of demands which included that she receive $7.5 million.

4

to work on the Heart Team.  However, DCH made the offer contingent upon McMullen meeting its performance expectations.

McMullen was placed on the Heart Team in March 1999, approximately four months after Dude's placement on the team.  Soon thereafter McMullen demonstrated performance deficiencies similar to those previously documented.  In August of 1999, McMullen had a confrontation with Jim LeBresh, a physician's assistant on the OR Heart Team, regarding the preparation of a patient for surgery.  McMullen had requested assistance with positioning the patient for surgery due to problems with her back, but  Mr. LeBresh, unaware of McMullen's back injury, challenged her on the need to request assistance and delay the preparation for surgery.  A verbal altercation ensued.

Soon thereafter, McMullen informed her supervisors that her back problems were getting worse and she would be seeking additional medical treatment. McMullen was then temporarily transferred to the Prep/Discharge Unit, because the position involved less lifting and back strain.  Once her medical restrictions were lifted, McMullen was transferred back to a  position as staff nurse in the General OR Team rather than to the Heart Team. McMullen filed her complaint on October 8, 1999, alleging race discrimination and fraudulent misrepresentation. (Doc. #1).

## III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party

5

asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

6

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility

7

determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV.    McMullen's Federal Disparate Treatment Claims**

**A.    General Analytical Framework**

If McMullen is to prevail on her disparate treatment claims, she must submit some proof of her employer's discriminatory motive, that is, some causal link between her race and the actions of which she complains. *See Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000). In a Title VII case such as this, where the plaintiff relies solely upon circumstantial evidence, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 & n. 6 (1980), 101 S. Ct. 1089, 1094 & n. 6, 67 L. Ed. 2d 207 & n. 6. "Demonstrating a prima facie case is not onerous, it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). Typically the prima facie case requires proof that the plaintiff was: (1) a member of the protected group (2) subjected to an adverse employment action (3) qualified to do the job; and (4) replaced or lost the position to someone outside of that protected group. *McDonnell Douglas*, 411 U.S. at 802; *Id.* at 802 n.13 ("The facts necessarily will vary in Title VII cases, and specification . . . of the prima

8

facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations."); *accord Chapman*, 229 F.3d at 1024 (summarizing the factors in an ADA disparate treatment case).

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the alleged discriminatory employment action. *Lathem*, 172 F.3d at 793. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Chapman*, 229 F.3d at 1024 (quoting *Burdine*, 450 U.S. at 254-55, 101 S. Ct. at 1094 (citation and footnote omitted)).

After the employer presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination is eliminated leaving the elements of the prima facie case. *Id.* at 1024-25. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the employer was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *Id.* The plaintiff may meet this burden by persuading the fact-finder either directly that a discriminatory reason more than likely motivated the employer, or indirectly that the employer's proffered explanation is unworthy of belief. *Id.* If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination and preclude summary judgment. *Id.* at 1025.

9

**B.    McMullen's Failure to Promote Claims**

**1.    Prima Facie  Case**

McMullen's claim is based on the two instances where she applied for, and was denied a transfer to the Heart Team.[4]  McMullen has labeled her claim as a failure to "promote," while DCH characterizes it as a "lateral transfer."

The prima facie "failure to promote" case is slightly different from the traditional *McDonnell Douglas* framework.  The plaintiff must present evidence (1) she was a member of a protected class; (2)  she was not given the promotion; (3) she was qualified for the position; (4) someone outside of the protected group was given the position. *Standard v.*

---

[4] In her complaint McMullen alleges four counts of discrimination, but this court will not consider the 1995 or the 1999 claim.  Under Title VII, a plaintiff must file a charge of discrimination within 180 days of the actions alleged to be discriminatory, or the plaintiff is barred from bringing a lawsuit based on those actions. 42 U.S.C. § 2000e-5(e); *Thomas v. Kroger Co.*, 24 F.3d 147, 150 (11th Cir. 1994). McMullen filed a charge of discrimination on February 1, 1999 and her Complaint on October 8, 1999. Accordingly, any cause of action based upon actions alleged to be discriminatory that occurred in 1995 is barred as untimely.  The court may consider the series of repeated instances of discrimination as a "continuing violation." In *Thigpen v. Bibb County*, the employees challenged a similar employment promotion process. 223 F.3d at 216 F.3d 1314, 1343-44 (11th Cir. 2000).  There the court held that to find a continuing violation, there must be the "direct result of [an] on-going policy actively maintained by [the employer]." *Id.* (quoting *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 794 (11th Cir. 1992)).  The court declined to find a continuing violation, where the activity involved "a series of repeated violations of an identical nature." *Id.* (quoting *Knight v. Columbus, Georgia*, 19 F.3d 579, 582 (11th Cir. 1994)). In these situations "'[b]ecause each violation gives rise to a new cause of action, each [violation] begins a new statute of limitations period as to that particular event." *Id.* (quoting *Knight*).  The DCH hiring process described utilized by the defendant suggests an individualized inquiry each time a hiring decision is made.  As such, determine it to be analogous to the *Knight* context and find there is no continuing violation.  Accordingly, since Ms. McMullen's claim based on her 1995 attempt to transfer is time-barred, we grant summary judgment.

Regarding the 1999 claim, the court agrees, with the defendants, that the November 1998 denial of promotion was not an adverse employment action. since defendant swiftly reversed the decision and offered her a position on the Heart Team. In *Pennington v. Huntsville*, 93 F. Supp. 2d 1201 (N.D. Ala. 2000), the court granted summary judgment where the defendant was denied a promotion in March of 1996 and subsequently filed a complaint with the EEOC. *Id.* at 1207.  He was offered the new position in June of 1996.  The facts in this case are very similar.  The court held that where the plaintiff "was swiftly offered a promotion after voicing his concerns and given that the plaintiff suffered no real consequences from the initial contrary decision" the action did not rise to the level of substantiality necessary for an adverse employment action.  McMullen applied for the Heart Team in November of 1998.  In January of 1999 when she complained, the matter was investigated and she accepted a team position in March.  The facts are similar to *Pennington* and thus her "delayed promotion" will not be considered for summary judgment purposes.

*A.B.E.L. Services, Inc.* 161 F.3d 1318, 1333 (11th Cir. 1998).[5]  In addition to the prima facie case, the plaintiff must also prove that the failure to promote was an adverse employment action. *See Pennington v. Huntsville*, 93 F. Supp. 2d 1201 (N.D. Ala. 2000) (holding that a conditional promotion did not amount to an adverse employment action); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (requiring an adverse employment action); *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (same).

Whether an action is adverse is decided on a case-by-case basis. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000).  To establish an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. ... the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. *Id; see also Tarrance v. Montgomery Cty. Bd. of Educ.*, 157 F. Supp. 2d 1261, 1266 (M.D. Ala. 2001) (plaintiff not subjected to adverse employment action when he was switched from one type of manual labor to another); *Bell v. Eufaula City Bd. of Educ.*, 995 F. Supp. 1377, 1385-86 (M.D. Ala. 1998) (transferring teacher from eighth grade class to seventh grade class not an adverse employment action, even though it required the teacher to review new books, create new lesson plans, engage in new preparation, and leave a subject he loved teaching); *Merriweather v. Alabama Dep't of Public Safety*, 17 F. Supp.2d 1260, 1276 (M.D. Ala. 1998) (denying plaintiff employed in defendant's main office a position in the outlying

---

[5]As the *Davis* court noted "Title VII is neither a general civility code nor a statute making actionable the 'ordinary tribulations of the workplace.'" 245 F.3d at 1239 (quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000).

county offices not an adverse employment action, even though it would have involved less work); *Smith v. Alabama Dep't of Pub. Safety*, 64 F. Supp. 2d 1215, 1222 (M.D. Ala. 1999) (transfer of state trooper from one city to another city did not constitute an adverse employment action, even though it caused trooper a longer commute to work, emotional problems, and great embarrassment for being transferred without a promotion). As one court summarized, "[w]hile not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions or privileges of employment does constitute adverse action.'" *Shannon v. Bellsouth Telecommunications, Inc.*, 2002 WL 1155772 (11th Cir. 2002) (quoting *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001).

The chief distinction McMullen makes between the Heart Team and the General Team is the amount of on-call time. A brief survey of the law in this jurisdiction and others suggest that  a mere decrease in *opportunities* for on-call time amounts to the sort of *de minimis* employment action Title VII was not designed to address. *See, e.g. Williams*, 85 F.3d 270, 274 (noting "a cut in base pay not offset by an increase in some other form of compensation would be a demotion. ... an indirect and minor effect on commission income (minor here because commission income was only a small fraction of the employee's total income) is not [materially adverse]"); *Tarrance v. Montgomery City Bd. of Educ.*, 157 F. Supp. 2d 1261, 1266 (M.D. Ala. 2001) (holding that overtime could be material in some cases and not others and finding it not to be material where the employee did not request it).  In her reply brief McMullen indicates that the Heart Team provides up to 80% of on-call time. Yet her deposition tells a different story; she notes that "[y]ou can get as much [on-call

12

time] as you want usually, because people are always looking for folks to take their call."

(McMullen Dep. at p. 98).   Though Ms. McMullen has made her subjective preferences

quite clear, from an objective standpoint, this court cannot find that a transfer to the Heart

Team would amount to a serious and material benefit to McMullen.   The differences in total

available income between the General Team and the Heart Team is "indirect and minor,"

*Williams,* 85 F.3d at 274.   Moreover, McMullen does not provide evidence to support her

allegation that experiences in the Heart Team would materially advance her career.[6]   The

only factor at issue other than on-call time appears to be prestige–a factor which does not

create an adverse employment action.   *See Davis*, 245 F.3d at 1245 (noting that mere loss

of prestige is not sufficient for an adverse employment action).   It is also worthy to note that

McMullen turned down other positions which would have offered an actual pay increase.

The court finds McMullen's claims that DCH's failure to move her to the Heart Team

in January and November of 1998 were not supported by a prima facie case and are due to

be dismissed as a matter of law.

---

[6]McMullen's deposition does not indicate any evidence that a transfer to the Heart Team would lead to
a promotion or an increase in status.   Her reply brief indicates that "upon working as a Heart Team Nina would
have been required to take call worked more hours and benefited from professional growth, and improved clinical
nursing experience." (Doc. #48, p.2) (errors in original).   McMullen had full access to the defendant's brief in
which it was argued her lateral transfer was not an adverse employment action.   She did not respond with any
evidence suggesting that the position amounts to a substantially different experience which would advance her
career.   Conversely, this court finds quite compelling DCH's evidence that McMullen's title, base pay, and benefits
would not have changed.   Moreover, McMullen turned down a position which would have in fact advanced her
career.   McMullen has done nothing more than establish that the Heart Team was important to McMullen because
it was where she *wanted* to work and hence a subjective preference rather than as an opportunity which would
materially and seriously advance her career.

## 2.    Legitimate Nondiscriminatory Reasons and Proof of Pretext

Even if McMullen could establish a prima facie case, she offers no evidence of pretext to rebut the legitimate nondiscriminatory reasons proffered by the defendant. DCH explained that it hired Schafer because she had experience on the Heart Team.  Dude was hired in November 1998 because he established a better rapport with the Heart Team and the selection committee thought he would work well with the team. McMullen, by contrast, had a record which even viewed in a light most favorable to her, suggests that her performance at DCH was not entirely satisfactory.

Eleventh Circuit precedent requires a strong showing of a disparity in qualifications in order for an inference of discrimination to arise.  As one court noted, "[i]n a failure to promote case a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. ... '[D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001) (quoting *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000).  In addition, so long as the proffered reasons are not unlawful, the employer can take any number of factors into consideration – including personality. *See Ramey v. Bowsher*, 915 F.2d 731 (D.C. Cir. 1990), *cert denied; see also Denny*, 247 F.3d at 1185-86 (noting that subjective factors may play a role in professional positions).

Plainly stated, there is no evidence that McMullen was in fact more qualified than either Schafer or Dude. In fact McMullen admitted that Shafer was better qualified for the

14

position and she agreed that the hospital was "justified" in hiring Dude.[7]  The hospital based the decision on qualifications and factors of teamwork and compatibility–areas where Dude had a good record and McMullen did not. Accordingly, McMullen has failed to demonstrate that "[s]he was so much more qualified than [her white] counterparts that a reasonable jury, on this record, could infer discrimination from the mere fact of he[r] nonselection." *Denny,* 247 F.3d at 1188.

In conclusion, McMullen has not established that DCH's failure to transfer her to the Heart Team rose to the level of an adverse employment action. Assuming, *arguendo,* that she could establish a prima facie case, summary judgment is still appropriate because she failed to establish a triable issue of pretext regarding the defendant's proffered reason for its actions.

### C.   **Hiring of Investigator Terry Price**

This court agrees with DCH that hiring Terry Price to investigate the plaintiff's claims does not amount to an adverse employment action.  Price was hired to investigate McMullen's complaints to the EEOC.  She has stated that she believed Price's investigation to be both fair and professionally conducted.  In fact, in her deposition she indicated that she did not think hiring him was inappropriate.  She stated that her lawyer believed the hospital may have included this claim as a technique to recuse a particular federal judge. (McMullen Dep. at pp. 447-49).  McMullen has provided no evidence to support this claim.

---

[7]McMullen's chief quibble with Dude's placement on the Heart Team was that she believed the hospital violated its own policy against hiring someone for a new position before they had worked there six months. (McMullen Dep. at pp. 260-61).  The evidence is that Dude had worked as a part of the DCH Hospital System for more than six months.

Moreover, following Price's investigation, McMullen was reconsidered and hired for the Heart Team position–the position she originally sought.

### D.    Various Charges of Differences in Discipline

McMullen also alleges that DCH disciplined her through "Point of Discussion" (hereinafter "POD") notations in her personnel file, whereas white employees were not similarly disciplined. Although disparities in discipline would likely constitute an adverse employment action, McMullen's prima facie case fails because she cannot prove that similarly situated white employees were treated differently. In *Anderson v. WBMG-42, Parker Communications, Inc.*, the court established evaluative criteria for differences in discipline. 253 F.3d 561, 564 (11th Cir. 2001). "The plaintiff must show that the comparator employees are 'involved in or accused on the same or similar conduct' yet are disciplined in a different, more favorable manner." *Id.* (quoting *Holyfield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). McMullen bases her opinion that white RN's were treated differently on a "feeling" she got during lunchtime conversations.[8] When asked, McMullen could not establish which nurses conveyed this "feeling" to her; she could not establish whether in fact the nurses were white or African American; and she could not identify which POD's were at issue. *Id.*[9]

---

[8]Specifically, McMullen said: "So I don't know what other nurses definitely got for point of discussion, P.A.R., but in the pool of having lunch and in the midst of having lunch and discussing incidents in which I have got a point of discussions and P.A.R.'s with my fellow nurses, I would get responses from other nurses saying you got a P.A.R. or a P.O.D. for that. And with that response I was feeling that, you know – and in the conversation they was telling me that, you know, they have done the are things and they did not receive P.O.D.'s or P.A.R.'s for those same incidents." (McMullen Dep. at p. 450-51).

[9]McMullen's reply brief (Doc. #48) lists  several witnesses to be called at trial.  She does not indicate, however, what they would testify about and whether in fact they have personal knowledge related to this claim. Furthermore, she attached no affidavits supplying the relevant information. The plaintiff is *pro se* and the court

(continued...)

For these reasons, the court concludes that McMullen cannot establish a prima facie case of discrimination as there is no evidence from which a reasonable jury could conclude that similarly situated employees were disciplined differently than was McMullen. *Anderson*, 253 F.3d at 564.

### E.   McMullen's Placement in the General Unit rather than the Heart Team after her Surgery

McMullen also argues that on account of her race, DCH temporarily transferred her to a lower paying position in the Prep/Discharge Unit because of race. Unlike the lateral transfers to and from the Heart Team, *conceivably* the transfer to the Prep/Discharge Unit does amount to an adverse employment action as it was a lower paying job. This court questions whether this temporary transfer was an adverse employment action because

---

[9](...continued)
attached an order explaining the motion for summary judgment and indicating what the plaintiff was required to present. (Doc. #47). McMullen is a college graduate and should not have had difficulty interpreting the requirements. The Eleventh Circuit's standard is as follows:

> "The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment' (citation omitted). Rule 56(e) of the Federal Rules of Civil Procedure requires that 'affidavits' that support or oppose summary judgment motions 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence.' This rule also applies to testimony given on deposition. Some courts, including our own, appear to have restated the general rule to hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.' (Citation omitted). These courts have coined these phrases from language appearing in the Supreme Court's decision in *Celotex Corp. v. Cartrett*, 477 U.S 317, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986), which held that a nonmoving party, in opposng a motion for summary judgment, need not produce affidavits, but may refer the district court to 'pleadings, depositions, answers to interrogatories, and admissions on file,' as provided by FRCP 56(c)."

*Macuba v. Deboler*, 193 F.3d 1316, 1322-23 (11th Cir. 1999). The court went on to define admissible evidence as falling (1) within an exception to the hearsay rule; (2) used solely for impeachment purposes; or (3) statement which are not hearsay at all. *Id.* It is not clear in this case which of the exceptions this statement meets. In the instant case, where McMullen has submitted no affidavits and, her testimony does not address who might testify and from what basis, this court cannot consider the evidence to be "reduced to admissible evidence." *Id.*

McMullen was transferred back to the OR after she recovered from her back injury. Nevertheless, DCH is entitled to summary judgment on this claim because McMullen cannot establish that any other similarly situated white employees were not treated as was she. The deposition testimony indicates that McMullen informed her superiors she was obtaining treatment for her back, her condition had grown worse, and she had visited the emergency department for her back where she was getting an M.R.I. and an additional pattern of treatment. In addition her doctor advised that she be medically evaluated prior to returning to the job as an OR nurse. (McMullen Dep. at pp. 451-53). Based on lunchtime conversations, McMullen contends that such a transfer was not warranted because other employees were not transferred when they displayed similar health problems. In her testimony, she named Melba Marshum, Linda Morrow, and Jill Power as other employees who were not transferred to lower paying jobs, yet she does not list them in her reply brief as witnesses to be called at trial nor does she attach any affidavits or other evidence to demonstrate that they were in fact treated differently than was she. (Doc. #48 at p. 2). Aside from her conclusory hearsay statements, she has not provided any credible evidence that the other employees were both similarly situated and treated differently.

Moreover, even if she could produce the affidavits of Marshum, Morrow, and Power and thus establish a prima facie case, she has failed to present evidence of pretext. DCH proffered several legitimate non-discriminatory reasons for transferring her to the Prep/Discharge unit. McMullen complained of severe back pain and in her brief period on the Heart Team had already had a verbal altercation with Dr. Labresh. McMullen argues that the real reason she was moved was not related to her injuries. (McMullen Dep. at pp.

454-56). Whether this is the real reason is not dispositive. As the Supreme Court held in *McDonnell Douglas*, when establishing pretext the plaintiff may proceed by "persuading the court that a discriminatory reason more likely motivate[d] the employer or indirectly by showing the employer's proffered explanation is unworthy of credence." 411 U.S. at 804-05. Here the plaintiff's hearsay statements do not present triable issue of fact as to whether DCH made the decision to transfer McMullen on racial grounds. She has presented no evidence to indicate that Dr. Labresh was racist, nor has she pointed to any statements which would lead us to believe that the decision was based on anything besides her performance difficulties.

In conclusion, the defendant's motion for summary judgment on claim that her temporary transfer to the Prep/Discharge Unit was discriminatory is due to be granted because there is no evidence that white employees were treated differently and McMullen has failed to provide credible evidence to establish pretext.

**F.   McMullen's Placement on the General Team Rather than the Heart Team**

McMullen argues that following her back surgery she was discriminatorily placed on the General OR Team rather than the Heart Team. This court has already determined that such an action did not amount to an adverse employment action. Even if the transfer was an adverse employment action, Ms. McMullen has not pointed to any other similarly situated employee who was treated differently, nor has she shown that there is a triable issue of pretext. DCH has provided a documented list of McMullen's performance deficiencies which occurred during her short tenure on the heart team, but McMullen bases her claim of discrimination on the hearsay testimony of another nurse who told McMullen

19

that she "wasn't going to repeat to [McMullen] what was said" after McMullen's altercation with Dr. Labresh. Furthermore, McMullen admitted she had no reason to believe Labresh was racist. (McMullen Dep. at pp. 430-31). Finally, there is no reason for a jury to doubt the legitimate reasons proffered by DCH for McMullen's exclusion from the Heart Team because there are other African Americans on the team. Given plaintiff's prior history and the team-like quality of the Heart Team, even if the plaintiff *had* developed her prima facie case there is absolutely no evidence to create a triable issue regarding pretext.

As with the other claims for discrimination, the court grants summary judgment based on its conclusion that the transfer from the Heart Team to the General Team was purely lateral and not an adverse employment action and because McMullen failed to establish the other elements of her prima facie case, or show DCH's reasons for placing her on the General Team rather than the Heart Team were pretextual.

## V.     McMullen's State Law Claim

McMullen's Complaint also contains a count for fraudulent misrepresentation, based on allegations that DCH falsely represented to McMullen that it does not discriminate in hiring, promoting, and firing decisions based on race. McMullen is an at-will employee of DCH. In Alabama, at-will employees cannot pursue fraud actions against their employers as a matter of law. "[S]ince an employee at will may be terminated at any time for any reason or for no reason, he cannot show injury from the fact of changes in his employment, even if those changes are attributable to malicious action on the part of the employer." *Stutts v. Sears, Roebuck & Co.*, 855 F. Supp. 1574, 1582 (N.D. Ala. 1994) (citing *Salter v. Ala.*

20

*Insurance Co.*, 561 So. 2d 1050, 1053-54 (Ala. 1990)). McMullen's at-will employment status bars her from pursuing this type of claim.

## VI.   Conclusion

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___9 th___ of  October, 2002.

Edwin Nelson
United States District Judge

21